WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Audel Adan Herrera-Amaya, | No. CV-14-02278-TUC-RM |
| Plaintiff, | **ORDER** |
| v. | |
| State of Arizona, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff's Motion to Clarify and/or Reconsider (Doc. 121) and Defendant's Motion for State Defendants' Witness Jennifer Manohan to Testify by Telephone (Doc 125). The parties have also filed simultaneous briefs regarding limits on the testimony of expert Ben Click. (Docs. 128, 129.)

## I.    Motion to Clarify and/or Reconsider

Plaintiff asks the Court to either clarify or reconsider portions of the Court's Orders filed on September 29, 2016 (Doc. 74) and September 19, 2017 (Doc. 120). In the September 29, 2016 Order, the Court resolved the parties' partial summary judgment motions. In the September 19, 2017 Order, the Court resolved the parties' motions in limine. The pending Motion to Clarify and/or Reconsider focuses on the impact of the Court's summary judgment ruling on the issue of whether Officer Duckett unconstitutionally extended the scope of the initial traffic stop by asking unrelated questions. In addition, Plaintiff asks the Court to reconsider the admissibility of certain exhibits.

## A.   Summary Judgment Ruling re: Extended Scope of Traffic Stop

In its September 29, 2016 Order resolving the parties' partial summary judgment motions, the Court found that Officer Duckett prolonged the duration of the traffic stop at issue in this case by asking questions unrelated to the traffic purposes of the stop. (Doc. 74 at 12-14.)[1] The Court separately analyzed two periods of questioning. First, the Court analyzed unrelated questions that Officer Duckett asked while he performed duties necessary to complete the traffic stop. (*Id.* at 13.) The Court found that "these questions, while interspersed with relevant questions, prolonged the duration of the traffic stop." (*Id.* at 14.) Second, the Court analyzed a set of unrelated questions that Officer Duckett asked after he had returned Plaintiff's documents. The Court noted that a traffic stop typically ends once an officer returns the driver's paperwork and issues the relevant citation or warning, and that in this case the additional six minutes of unrelated questioning and the dog sniff that Officer Duckett conducted caused the traffic stop to be prolonged beyond the time that it reasonably should have been completed. (*Id.* at 14.)

The Court found that whether Officer Duckett had reasonable suspicion of criminal activity to justify expanding the scope of the traffic stop was a jury issue. (*Id.* at 16.) However, the Court also noted that Plaintiff's answers to unrelated questions could not be considered in determining if reasonable suspicion existed. (*Id.* at 15-16.) The Court reasoned that the answer to a question may not be used to find reasonable suspicion to ask the question. (*Id.* at 16.) The Court summarized the six factors that Officer Duckett purportedly relied upon as providing reasonable suspicion of criminal activity. (*Id.* at 15-16.) The Court noted that four of the six factors were elicited by impermissible questions and thus could not be considered. (*Id.*) The Court found that only two factors could permissibly be relied upon in determining whether Officer Duckett had reasonable suspicion of criminal activity: (1) that Plaintiff at one point spoke English during the stop but soon returned to speaking Spanish exclusively, and (2) that Plaintiff's body language

---

[1] All record citations refer to the page numbers generated by the Court's electronic filing system.

became more defensive and his answers became more evasive throughout the stop. (*Id.*)

During a pretrial conference held on June 19, 2017, the parties requested clarification of the impact of the Court's summary judgment ruling on the admissibility of evidence of Officer Duckett's unrelated questions and Plaintiff's answers thereto. In its September 19, 2017 Order resolving the parties' motions in limine, the Court clarified that, if the jury finds that Officer Duckett obtained reasonable suspicion of criminal activity prior to broadening the scope of the traffic stop with unrelated questions and a dog sniff, then the jury may consider whether Plaintiff's responses to the unrelated questions, in conjunction with the results of the dog sniff and the totality of the circumstances, established probable cause to search Plaintiff's vehicle.[2] (Doc. 120 at 3.) Accordingly, the Court held that its summary judgment rulings did not categorically preclude admission of evidence related to the unrelated questions and answers thereto. (*Id.*)

In the pending Motion to Clarify and/or Reconsider, Plaintiff argues that "the undisputed evidence, as already found by this Court, clearly shows that Officer Duckett did not have reasonable suspicion of criminal behavior to expand the stop before he began asking the questions which this Court has found are unrelated to the traffic stop." (Doc. 121 at 3.) Plaintiff argues that Officer Duckett immediately began asking unrelated questions, and that the two "permissible" factors identified in the Court's September 29, 2016 Order both emerged *after* Officer Duckett had already expanded the scope of the stop through the unrelated questioning. (*Id.* at 4-8.) Accordingly, Plaintiff argues that he is entitled to partial summary judgment on the issue of whether Officer Duckett unconstitutionally expanded the scope of the stop. (*Id.* at 8.) Plaintiff further argues that evidence related to the unrelated questioning should be excluded under Rule 403 of the

---

[2]    The Court's September 19, 2017 Order contains an error on line 13 of the third page. The Order says that "the jury may consider whether Plaintiff's responses to the unrelated questions established reasonable suspicion to search Plaintiff's vehicle." (Doc. 120 at 3.) The Court intended to say that "the jury may consider whether Plaintiff's responses to the unrelated questions established probable cause to search Plaintiff's vehicle."

Federal Rules of Evidence.  (*Id.*)

Plaintiff's arguments highlight two problems with the Court's September 29, 2016 Order.  First, the Court found that the unrelated questions that Officer Duckett asked while he performed duties necessary to complete the traffic stop prolonged the duration of the stop, but it did not make a finding as to the critical inquiry of whether they *unreasonably* prolonged the duration of the stop.  *See United States v. Turvin*, 517 F.3d 1097, 1101-04 (9th Cir. 2008).  The Ninth Circuit has rejected a bright-line rule that unrelated questions are impermissible if they prolong a traffic stop's duration at all; the question is one of reasonableness.  *See id.* at 1103 ("We will not accept a bright-line rule that questions are unreasonable if the officer pauses in the ticket-writing process in order to ask them."). Based on the Court's summary judgment findings, Officer Duckett's conduct *after* returning Plaintiff's paperwork unreasonably prolonged the duration of the stop.  Officer Duckett's conduct *prior to* returning Plaintiff's paperwork prolonged the stop, but the Court has made no finding as to whether it *unreasonably* prolonged the stop.

Second, by ruling that Plaintiff's answers to unrelated questions cannot be analyzed in determining whether Officer Duckett had reasonable suspicion of criminal activity to justify expanding the scope of the stop, the Court erroneously departed from Ninth Circuit case law which requires the trier of fact to "examine the 'totality of the circumstances' surrounding the stop" in determining whether an officer's conduct was reasonable.  *Turvin*, 517 F.3d at 1101.  Furthermore, as a practical matter, the ruling renders *any* unrelated questioning during a traffic stop impermissible unless independently supported by reasonable suspicion of criminal activity, even though that rule has been overruled by the Supreme Court.  *See United States v. Mendez*, 476 F.3d 1077, 1080 (9th Cir. 2007) (finding that, to the extent prior Ninth Circuit cases held that unrelated questioning must be supported by reasonable suspicion even if it did not prolong the traffic stop, that prior case law has been overruled by *Muehler v. Mena*, 544 U.S. 93 (2005)).

Although Officer Duckett did not have reasonable suspicion of criminal activity

1   when he asked his first unrelated question, neither did he unreasonably prolong the traffic

2   stop by asking that first question. *See Turvin*, 517 F.3d at 1103 ("Questions that hold

3   potential for detecting crime, yet create little or no inconvenience, do not turn reasonable

4   detention into unreasonable detention." (quoting *United States v. Childs*, 277 F.3d 947,

5   953-54 (7th Cir. 2002 (en banc)).) As the Ninth Circuit has recognized, "grounds for

6   suspicion of criminal activity" may "continue to unfold" throughout the course of a stop

7   as the situation evolves. *See United States v. Rodgers*, 656 F.3d 1023, 1027 (9th Cir.

8   2011). If new grounds for suspicion unfold over the course of a stop, the stop may be

9   permissibly extended. *Id.*

10      The Court now finds that whether Officer Duckett *unreasonably* prolonged the

11  duration of the traffic stop by asking unrelated questions while he performed the duties

12  necessary to complete the stop—and, if so, at what point the prolonged detention became

13  unreasonable and whether reasonable suspicion of criminal activity existed at that

14  point—are issues properly reserved for the jury. The jury is entitled to consider the

15  totality of the circumstances—including Officer Duckett's unrelated questions and

16  Plaintiff's answers thereto—in evaluating whether Officer Duckett's conduct was

17  reasonable. The Court does not disturb its summary judgment ruling that Officer

18  Duckett's conduct following his return of Plaintiff's documents unreasonably prolonged

19  the duration of the traffic stop. Accordingly, if the jury finds that Officer Duckett did not

20  have reasonable suspicion of criminal activity by the time he returned Plaintiff's

21  documents, then the continued unrelated questioning and dog sniff that occurred

22  following the return of Plaintiff's documents violated the Fourth Amendment.

23      The Ninth Circuit has recognized that "a district court may reconsider its prior

24  rulings so long as it retains jurisdiction over the case." *United States v. Smith*, 389 F.3d

25  944, 948 (9th Cir. 2004). However, the Court is mindful that the limited reconsideration

26  of its summary judgment rulings set forth above is likely to have an impact on the parties'

27  trial preparation. Accordingly, the Court will entertain a motion or stipulation to

28  continue trial if the parties need additional time to prepare for trial as a result of this

1    Order.

2                **B.**      **Admissibility of Unrelated Incident Reports**

3          In its September 19, 2017 Order resolving the parties' motions in limine, the Court

4 held that two unrelated incident reports authored by Officer Duckett have limited

5 relevance and that the relevance is substantially outweighed by the danger of confusing

6 the issues or wasting time. (Doc. 120 at 8-9.) In the pending Motion to Clarify and/or

7 Reconsider, Plaintiff argues that the unrelated incident reports show that Officer Duckett

8 has the ability to videotape alleged following-too-close violations and had actually done

9 so before, which is relevant to Officer Duckett's credibility as well as the issue of

10 whether Plaintiff was following the vehicle in front of him too closely.

11          The Court's prior ruling does not prevent Plaintiff from cross-examining Officer

12 Duckett regarding his ability to document evidence of traffic infractions using his in-car

13 camera. At trial, Plaintiff will be free to question Officer Duckett regarding his ability to

14 videotape alleged following-too-close violations and whether he has used that ability on

15 other occasions. Based on defense counsel's averments during oral argument on January

16 9, 2018, Officer Duckett is anticipated to testify that he does have the ability to videotape

17 alleged following-too-close violations and that he uses that ability on some occasions but

18 not others. If Officer Duckett so testifies, then there will be no need to introduce the two

19 unrelated incident reports for purposes of impeachment. If, contrary to defense counsel's

20 expectations, Officer Duckett testifies at trial that he has never videotaped alleged

21 following-too-close violations or that he does not have the ability to do so, then Plaintiff

22 is granted leave to move to introduce the relevant portions of the two unrelated incident

23 reports for the limited purpose of impeachment.

24                **C.**      **Admissibility of ACJIS Operating Manual**

25          In its September 19, 2017 Order, the Court held that Officer Duckett's knowledge

26 of the National Insurance Crime Bureau ("NICB") system is relevant to the issue of

27 whether Officer Duckett reasonably relied upon border-crossing information received

28 from the system, and that Plaintiff may question Officer Duckett regarding any such

1  knowledge. (Doc. 120 at 10-11.) However, the Court found that Plaintiff's theory of

2  relevance with respect to the Arizona Criminal Justice Information System ("ACJIS")

3  Operating Manual hinged on whether Officer Duckett had knowledge of the caveats

4  mentioned in the manual regarding border-crossing information provided by the NICB

5  system, and that the manual is hearsay.

6  In his Motion to Clarify and/or Reconsider, Plaintiff argues that the ACJIS

7  Operating Manual is non-hearsay as an opposing party's statement under Fed. R. Evid.

8  801(d)(2)(B) because the Arizona Department of Public Safety maintains the ACJIS

9  system. Plaintiff also argues that, even if hearsay, the manual falls under the public

10  record exception to the rule against hearsay, pursuant to Fed. R. Evid. 803(8)(A)(i).

11  Plaintiff further argues that he should not have to establish that Officer Duckett was

12  aware of the contents of the manual in order to show that the manual is admissible,

13  because Officer Duckett was a user of the ACJIS system and the ACJIS manual states

14  that all ACJIS users are required to understand and abide by the policies and procedures

15  set forth in the manual. Accordingly, Plaintiff argues that Officer Duckett should have

16  been aware of caveats contained in the manual, such as the caveat that border crossing

17  information from the system is not in real time. (*See* Doc. 121 at 27.) Plaintiff also

18  argues that the ACJIS Operating Manual shows that query responses include the

19  following warning: "The NICB provides the information contained herein solely as an

20  investigatory aid. Since these records are not validated, the NICB does not guarantee or

21  warrant their legitimacy. Please use secondary verification before you take any

22  enforcement action." (*Id.*) Plaintiff argues that he should be able to use the sample query

23  from the ACJIS Operating Manual to show that Officer Duckett received this warning

24  when he queried the system to check Plaintiff's border crossing information, because

25  Defendants have been unable to locate records of the specific query results obtained by

26  Officer Duckett.

27  The Court finds Plaintiff's arguments persuasive and concludes that it erred in

28  previously finding that the ACJIS Operating Manual is hearsay and only conditionally

relevant. Plaintiff has adequately established that the manual is non-hearsay under Fed. R. Evid. 801(d)(2)(B) and/or a public record under Fed. R. Evid. 803(8)(A)(i). Plaintiff should be able to use the manual to show that a reasonable officer would have been aware that border-crossing information obtained from the ACJIS system is not in real time. Furthermore, the sample query in the manual has some tendency to show that Officer Duckett would have received the warning regarding the necessity of secondary verification when he obtained query results from the ACJIS system. *See* Fed. R. Evid. 401 (evidence is relevant if it has any tendency to make a fact of consequence more or less probable). Particularly in light of the fact that Defendants have not disclosed the specific query results obtained by Officer Duckett, Plaintiff should be able to use the sample query from the ACJIS manual to challenge the reasonableness of Officer Duckett's reliance on query results from the ACJIS system. With proper foundation and authentication, the ACJIS Operating Manual will be admissible at trial.

### D. Admissibility of Table Converting Miles Per Hour to Feet Per Second

In its September 19, 2017 Order, the Court found that the mathematical conversion of miles per hour to feet per second is an appropriate matter for judicial notice but that, at trial, Plaintiff must call a witness to lay foundation for a proffered conversion table by testifying to the accuracy of the conversions set forth therein. In his Motion to Clarify and/or Reconsider, Plaintiff states that his expert witness can testify to the accuracy of the conversions in the table but that Plaintiff's expert disclosure does not address that testimony; accordingly, Plaintiff asks the Court to simply take judicial notice of the conversion table.

If Defendant objects at trial to Plaintiff's expert testifying to the accuracy of the conversions in the conversion table, Plaintiff is granted leave to re-urge his request for judicial notice.

### II. Motion for Manohan to Testify by Telephone

State Defendants seek leave for witness Jennifer Manohan, who resides in Corpus Christi, Texas, to testify telephonically during the trial of this matter. During oral

1    argument on January 9, 2018, Plaintiff expressed concern regarding Manohan's

2    testimony generally but did not raise any objections to the specific issue of Manohan

3    testifying by telephone.  Plaintiff has not responded to State Defendants' Motion, and the

4    time for doing so has expired.  The Court will grant State Defendants' request for

5    Manohan to testify telephonically.

6    **III.    Testimony of Expert Ben Click**

7          In its September 19, 2017 Order, the Court found that numerous opinions listed in

8    Defendants' expert Ben Click's report are inadmissible because they are statements of

9    legal conclusions.  (Doc. 120 at 5-7.)  The Court held that Click would be permitted to

10   testify, but that he could not testify as to the requirements of the law and whether Officer

11   Duckett's actions were lawful.  (*Id.* at 7.)  The Court also noted that it was concerned that

12   many of the references to standard police practices contained in Click's report are

13   "merely camouflaged conclusions on ultimate legal issues," and it held that Click would

14   not be permitted to "offer opinions on ultimate legal issues under the guise of testifying

15   about standard police practices and policies."  (*Id.* at 7.)

16         Plaintiff appears to have interpreted the Court's September 19, 2017 Order as

17   ruling that Click will be precluded from testifying as to standard police practices and

18   policies and whether Officer Duckett's conduct complied with such practices and

19   policies. Plaintiff has interpreted the Order more broadly than the Court intended.  When

20   the Court indicated that Click would not be permitted to offer opinions on ultimate legal

21   issues under the guise of testifying about standard police practices and policies, it was

22   referring to specific portions of Click's report in which he opines that standard police

23   practices and policies have been developed to comply with legal requirements, and then

24   describes legal requirements under the guise of discussing standard practices and policies.

25   (*See, e.g.*, Doc. 115-1 at 10 (explaining that standard police use of force policies are

26   written to conform with current case law, and then describing legal requirements).)  Click

27   will not be permitted to testify regarding legal requirements and whether Officer

28   Duckett's actions were lawful.  However, Click will be permitted to testify regarding

standard police practices and procedures and whether Officer Duckett's actions were consistent with standard police practices and procedures.

**IT IS ORDERED** that Plaintiff's Motion to Clarify and/or Reconsider (Doc. 121) is **partially granted and partially denied**, as set forth above.

**IT IS FURTHER ORDERED** that Defendant's Motion for State Defendants' Witness Jennifer Manohan to Testify by Telephone (Doc. 125) is **granted**.

Dated this 19th day of January, 2018.

_____

Honorable Rosemary Márquez
United States District Judge